## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOSHUA V.,[1]                             )
                                          )
                    Plaintiff,            )
                                          )        CIVIL ACTION
v.                                        )
                                          )        No. 23-1086-JWL
MARTIN O'MALLEY,[2]                       )
Commissioner of Social Security,          )
                                          )
                    Defendant.            )
_____   )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Supplemental Security Income (SSI) benefits pursuant to sections 1602, and

1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A)

(hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ)

decision, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the
interest of protecting the privacy interests of Social Security disability claimants, it has
determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On December 20, 2023, Mr. O'Malley was sworn in as Commissioner of Social
Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr.
O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant.
Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSI benefits on January 29, 2021.  (R. 17, 328).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ failed properly to evaluate the medical opinion of Plaintiff's psychotherapist, Mr. Boniello, LSCSW.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.     Discussion

Plaintiff points out that Mr. Boniello provided two documents opining on Plaintiff's mental abilities and limitations resulting from his mental impairments— depressive disorder, anxiety disorder, panic disorder, post-traumatic stress disorder, bipolar disorder, attention deficit/hyperactivity disorder, and narcolepsy.

> On February 20, 2021, LSCSW Boniello completed a Medical Source Statement - Mental ("MSS-M") indicating [Plaintiff's] mental impairments would cause several limitations, including absences from work four days per month and off task behavior 25 percent or more of the time. Then, on August 1, 2022, LSCSW Boniello completed another medical opinion in the form of a three-page narrative letter. The letter explained [Plaintiff's] functional limitations related to his mental health, at one point noting that "from my observations, I believe [Plaintiff's] mental health issues presently render him disabled…."

(Pl. Br. 9) (citations omitted) (citing R.664, 1449-51 and quoting R. 1451).

4

Plaintiff argues threefold error; a failure to acknowledge Mr. Boniello's letter opinion, a failure to assess the supportability of Mr. Boniello's medical source statement, and the ALJ's finding that Mr. Boniello's opinions are unpersuasive is not supported by substantial evidence.  (Pl. Br. 9).  Plaintiff argues, "Absent from the ALJ's discussion was any substantive discussion about or citation to LSCSW Boniello's [letter] opinion." Id. at 12 (citing R. 1449-51).  He acknowledges that multiple medical opinions from a particular medical source will be articulated "together in a single analysis," 20 C.F.R § 416.920c(b)(1), but argues the regulations do "not free ALJs to merely ignore medical opinions rendered by a medical source who has already rendered another opinion" and argues the ALJ failed to demonstrate he considered Mr. Boniello's letter opinion, arguing it was significantly probative evidence he rejected but failed to discuss.  (Pl. Br. 12, 14) (citing Janet Grace O. v. Kijakazi, Civ. A. No. 20-1228-JWL, 2021 WL 3032913, at *5 (D. Kan. Jul. 19, 2021)).  Plaintiff acknowledges the ALJ stated Mr. Boniello "also opined that the claimant is 'disabled' and unable to work," id. at 14 (quoting R. 27), but argues, "it is unclear whether this vague, conclusory sentence was intended to address LSCSW Boniello's narrative letter."  Id.  He argues, "the mere fact that a medical opinion includes such a statement [that a claimant is disabled] does not warrant rejecting the opinion as a whole" and "the ALJ should have evaluated the functional limits set forth in the opinions."  Id. 15 (citing Crader v. Berryhill, Civ. A. No. 17-4077-JWL, 2018 WL 4111715, at *3 (D. Kan. Aug. 29, 2018)).

Plaintiff next argues that none of the ALJ's reasons for finding Mr. Boniello's opinions unpersuasive "constitute an assessment of the factor of 'supportability.'"  Id. 16.

He argues the ALJ's finding the opinions "unsupported by the claimants' [sic] generally conservative treatment history" (R. 27), is "a comparison to external evidence, and as such was a statement regarding the factor of 'consistency'" rather than consideration of Mr. Boniello's explanation and support for his opinions, as required by 20 C.F.R. § 416.920c(c)(1). (Pl. Br. 16-17). He argues, "Alternatively, to the extent the ALJ's reference to 'generally conservative treatment history,' intended to remark upon LSCSW Boniello's own, personal treatment history with [Plaintiff], such would be a consideration of his 'relationship with the claimant,'" a different factor for evaluating medical opinions. Id. 17.

Plaintiff's third claim of error is that finding the opinions were unpersuasive is unsupported by substantial evidence because "the ALJ's discussion [of his finding the opinions unpersuasive] failed to cite any specific evidence within the record." Id. 18 (citing R. 27). He argues the record shows Plaintiff "engaged in individual psychotherapy, case management, and supportive counseling services, provided by LSCSW Boniello himself," and Plaintiff "was prescribed psychotropic medications," and "was hospitalized for five days secondary to suicidal ideation, anxiety, and depression," all of which is inconsistent with finding conservative treatment. Id. 18-19. He also argues the ALJ erred in discussing conservative treatment when he found Plaintiff "did not require case management or other community supports" because in the opinion letter Mr. Boniello explained he provided case management support services. Id. 19 (citing R. 1450).

Plaintiff argues the ALJ's finding Mr. Boniello's "opinions are inconsistent with the normal clinical signs and findings observed by other providers" is unsupported by substantial evidence because "the objective observations of [Plaintiff] throughout the medical record reflect findings of 'blunted' or 'restricted' affect with 'anxious' or 'depressed mood." (Pl. Br. 20-21). He argues Mr. Boniello explained Plaintiff "was unable to tolerate stress, maintain control of his emotions, manage a productive schedule, or communicate effectively with others over extended periods, or while anxious about his performance." Id. 21.

In his response, the Commissioner argued the ALJ reasonably evaluated Plaintiff's workplace limitations, noting the ALJ's evaluation of Plaintiff's mental health treatment and his activities during the period at issue. (Comm'r Br. 5-6). He noted the ALJ's citation to Plaintiff's inpatient treatment at Cottonwood Springs and the record's acknowledgement of Plaintiff's statement he had no plan for suicide. Id. 6. He noted the ALJ's reliance on several factors including: Plaintiff's often taking only one of his two potential daily doses of anxiety medication prescribed on an as needed basis; Plaintiff's microwaving meals, doing laundry, and managing finances; Plaintiff's reported two-week trip to Miami to visit a friend; and his performance of some work part-time at an auto body shop during the relevant period. Id. The Commissioner noted that the ALJ had recognized Plaintiff's mood and affect as recorded on mental status examinations had "varied greatly from euthymic to anxious, depressed, or blunted" but were otherwise largely unremarkable. Id. 6-7 (citing R. 26, 996, 998, 1281, 1364-68).

The Commissioner points out the ALJ considered the administrative medical findings of the state agency psychologists and found the mild limitations they opined regarding three of the four broad mental functional areas are "unpersuasive because other evidence of record reflected that Plaintiff's mental functioning was more limited." (Comm'r Br. 7).  He points to the ALJ's finding "Plaintiff's mental health treatment, including his history of medication management and his May 2022 inpatient treatment, supported moderate limitations in all four of the paragraph B criteria, and that those greater limitations would preclude him from performing detailed and fairly complex work" as opined by the state agency psychologists.  Id. 7-8.  He notes the ALJ evaluated Mr. Boniello's opinions also and argues, "the ALJ reached a middle ground among the diverging medical opinions and found that Plaintiff remained able to perform a reduced range of unskilled work—the least mentally demanding type of work—with additional social interaction and pace limitations."  Id. 8 (citing R. 22).

The Commissioner then turns to the ALJ's evaluation of Mr. Boniello's opinions and argues the ALJ evaluated them properly.  As did Plaintiff, the Commissioner discusses Mr. Boniello's Medical Source Statement and opinion letter disjunctively.  Id. 10-17.  Regarding the Medical Source Statement, the Commissioner argues the ALJ also discussed Plaintiff's conservative treatment earlier in his decision and specifically noted the inpatient treatment and "reasonably concluded that Plaintiff's generally conservative treatment—including Mr. Boniello's own therapy notes that included no objective signs or findings—did not support Mr. Boniello's opinions that Plaintiff's mental limitations were so extreme as to would [sic] render him unable to perform even unskilled work."

8

(Comm'r Br. 11).  He argues the ALJ also properly articulated the consistency factor, finding Mr. Boniello's opinions were inconsistent with the normal clinical signs and findings of other medical sources, including Plaintiff's psychiatrist, Dr. Rubin Moore.  Id. 12.  He notes the ALJ's discussion of these clinical signs and findings supports his consistency finding regarding Mr. Boniello's opinion and need not have been repeated when discussing that opinion.  Id. 12-13.  He notes the ALJ found the "'normal clinical signs and findings were inconsistent with more than moderate psychological limitations,' which would make them inconsistent with the marked and extreme limitations opined by Mr. Boniello."  Id. 13 (quoting R. 26).  The Commissioner argues, "The ALJ articulated his consideration of both the supportability and consistency factors" with regard to the Medical Source Statement, making his discussion "sufficient to trace the path of the ALJ's reasoning, which is all that is required."  Id. (citing Revisions to Rules Regarding the Evaluation of Medical Evidence 82 Fed. Reg. 5,844 at 5,858; 2017 WL 168819 (SSA Jan. 18, 2017)).

The Commissioner then discusses Mr. Boniello's letter opinion.  Id. 13-17.  He argues the ALJ demonstrated he had considered the letter opinion when he stated Mr. Boniello "also opined that the claimant is 'disabled' and unable to work" which is Mr. Boniello's opinion stated only in the letter opinion and nowhere else in the record.  Id. 14.  The Commissioner then argues although the ALJ was required to consider the letter, he was not required to evaluate its persuasiveness because it is not a medical opinion as defined in the regulations.  Id.  He argues this is so because the letter "does not describe any specific functional limitation Plaintiff would have in a workplace."  Id. (citing 20

C.F.R. § 416.913(a)(2)).  He argues, "Mr. Boniello's statements referenced in Plaintiff's

Brief are descriptions of Plaintiff's self-reported symptoms and/or his own observations

(see Pl. Br. 10), but they are not opinions as to Plaintiff's work-related functional

limitations."  (Comm'r Br. 14-15) (citing Staheli v. Comm'r SSA, 84 F.4th 901, 906-07

(10th Cir. 2023)).

> The Commissioner argues,
>
> in the August 2022 letter, Mr. Boniello provides a brief history of
> Plaintiff's mental health diagnoses, symptoms, treatment, and efforts to
> gain and retain employment, as well as his beliefs regarding Plaintiff's
> prognosis.  As such, the August 2022 letter falls squarely within the
> regulatory definition of "other medical evidence."

Id. 15 (citation omitted).  He argues that to the extent Mr. Boniello opined that Plaintiff is

disabled and unable to work, the ALJ was correct to find that such a statement is on an

issue reserved to the Commissioner and need not be evaluated in the decision.  Id.

In his Reply Brief, Plaintiff reiterates the arguments in his brief.  Plaintiff argues

that Mr. Boniello's letter opinion also contains many statement which fall within the

definition of medical opinion in that he provided opinions in the letter about functional

limitations, that Plaintiff: "very often finds himself unable to keep up with the pace of

certain job expectations;" "often finds himself distracted [and] impulsive;" "often finds

himself … unable to communicate effectively especially when he feels anxious about his

performance;" and "becomes highly anxious and verbally aggressive when he feels

overwhelmed or is not 'being heard' with regards to his need for assistance."  (Reply Br.

4) (quoting R. 1450-51).

### A.    Standard for Evaluating Medical Opinions

As relevant here the regulations define "medical opinion" and "prior administrative medical finding:"

> (2) Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D) … of this section.: …
>
>> (i) (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> ***
>
> (5) Prior administrative medical finding.  A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:
>
>> (i) The existence and severity of your impairment(s);
>>
>> (ii) The existence and severity of your symptoms;
>>
>> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
>>
>> ***
>>
>> (v) If you are an adult, your residual functional capacity;
>>
>> (vi) Whether your impairment(s) meets the duration requirement; and

>   (vii) How failure to follow prescribed treatment (see § 404.1530)
>   and drug addiction and alcoholism (see § 404.1535) relate to your
>   claim.

20 C.F.R. § 419.913(a)(2, 5).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 416.920c. That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the Commissioner's decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b). The articulation requirement applies for each source, but not for each opinion of that source separately. 20 C.F.R. § 404.1520c(b)(1). It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2).

**B.**    **The ALJ's Relevant Findings**

The ALJ found that Plaintiff has mental impairments of "depressive disorder, anxiety disorder, panic disorder, post-traumatic stress disorder (PTSD), bipolar disorder, attention deficit/hyperactivity disorder (ADHD), and narcolepsy."  (R. 20) (bold omitted). He found Plaintiff did not meet or medically equal the criteria of Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.15 (trauma- and stressor-related disorders).  (R. 21).  However, he found that Plaintiff is moderately limited in all four broad mental functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself.  Id. 21-22.

The ALJ's decision included a discussion of Plaintiff's mental healthcare records, subjective allegations, and medical opinions regarding his mental impairment, limitations, and abilities:

> As for the claimant's mental impairments, he complains of overwhelming depression and social anxiety resulting in low motivation, isolation, suicidal thoughts and ruminating thoughts.  He reportedly feels overwhelmed by his physical and emotional pain despite medication management and individual therapy, and he has been diagnosed with narcolepsy type 2, which causes an abnormal sleep pattern.  He has also been diagnosed with obstructive sleep apnea as evidenced by 52 percent central apneas (Ex. B23F/22).  The claimant testified and his father report[s] he has battled at least seasonal depression his entire adult life, but the claimant reported his symptoms have become more frequent (Ex. B31F; B27F/10-11).
>
> Although the undersigned finds the claimant's psychological impairments and sleep disorders cause some interference in his ability to perform work activities, the record reveals his symptoms are not of such a consistent and continuous nature that they would preclude all work activity or result in marked to extreme limitations in the "paragraph B" criteria.

First, the undersigned notes the claimant's generally conservative treatment history is inconsistent with the alleged intensity and frequency of psychological symptoms. During the relevant period, the claimant participated in individual therapy and psychotropic medication management. However, he refused to trial using a CPAP machine [sic] and received limited medication management for his narcolepsy (Ex. B23F/5; B29F/4). Moreover, despite reports of social isolation, constant suicidal thoughts, and irrational fears, the claimant did not require case management or other community supports and he did not seek crisis management or emergent treatment secondary to acute exacerbations. He also reported he generally used only 1 of 2 possible doses of clonazepam (Ex. B29F/6). The claimant received psychiatric inpatient treatment over 5 days in May 2022 secondary to reports of increased anxiety and suicidal ideation, but he admittedly did not have a plan to commit suicide and he reported his biggest problem at the time was the inability to distract himself from his thought content secondary to lethargy and low motivation (Ex. B29F/2). If the claimant's symptoms were as frequent and as intense as alleged, it would be reasonable to assume he would have required intensive treatment on a more frequent and more intensive basis.

Although the claimant's therapist noted the claimant's subjective reports and discussions of coping skills, therapy notes revealed no objective signs and findings (Ex. B27F/10-11; B31F; B7F/14-15). On the other hand, mental status examinations, performed by both medical examiners and his psychiatrist, revealed few abnormalities. For instance, few claimant's mood and affected varied widely between euthymic, anxious, depressed, or blunted. However, he generally exhibited logical thoughts, normal psychomotor activity, good eye contact, a pleasant and cooperative attitude, and intact attention span, concentration, and memory functioning (Ex. B14F/7; B2F/3; B20F/6; B22F/5; B23F/19; B29F/2, 4). The normal clinical signs and findings are inconsistent with more than moderate psychological limitations.

Finally, the claimant's activities of daily living are inconsistent with disabling mental impairments. Specifically, despite reports that he has generally not left his house in the last 12 months other than to visit mental health providers, he reportedly spent 2 weeks in Miami with a friend in July 2021 and he reported auto work was simply not available in April 2022 (Ex. B29F/4; B22F/5). The claimant also previously reported he could cook simple microwave meals, do his own laundry, and manage his finances (Ex. B5E). His father also reported he occasionally helped with projects around the house, shops for personal items, drive[s], go[es] outside on a daily basis to smoke cigarettes, and spends his time watching

television although he needed medication and appointment reminders because he slept unusual hours (Ex. B10E). The ability to engage in and complete these tasks is inconsistent with the intensity and frequency of symptoms alleged.

Although the undersigned finds the claimant's allegations are not fully consistent with the evidence, a review of the limitations resulting from the claimant's impairments indicates that they are "severe," and require a reduction of the residual functional capacity. The undersigned has accommodated the claimant's moderate difficulties in understanding, remembering or applying information, interacting with others, maintaining concentration, persistence or maintaining pace, and adapting or managing himself by limiting him to detailed, but uninvolved, instructions in the performance of simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements involving only simple, work-related decisions with few, if any, workplace changes. He should have no interaction with the general public, but he can tolerate occasional interaction with coworkers, and frequent interaction with supervisors. The claimant's assertions related to his inability to function due to mental deficits have been considered, but are not given great weight because the medical record does not support his allegations.

In making this finding, the undersigned finds the State agency psychological consultants' opinions are unpersuasive because the claimant's medication management for sleep disorders and ADHD consistent [sic] with more than mild limitations in his ability to concentrate, persist, or maintain pace and difficulty completing fairly complex work (Ex. B6A; B9A). The mild limitations in adapting or managing himself and understanding, remembering or applying information are also unsupported by the claimant's May 2022 inpatient hospitalization.

The claimant's therapist, Michael Boniello, LSCSW, opined that the claimant would miss 4 days of work per month, would be off task more than 25 percent of the day, and has primarily marked and extreme limitations in all areas of basic mental work activity (Ex. B5F). He also opined that the claimant is "disabled" and unable to work. The undersigned finds these opinions are unpersuasive because whether the claimant is "disabled" is a determination reserved to the Commissioner (20 CFR 416.927(d)). Moreover, the remainder of these opinions are unsupported by the claimants' generally conservative treatment history, and these opinions are inconsistent with the normal clinical signs and findings observed by other providers.

(R. 25-27).

### C.   Analysis

The court finds no error in the ALJ's evaluation of Mr. Boniello's medical opinions.  As to Plaintiff's first allegation, that the ALJ failed to acknowledge, cite, or address Mr. Boniello's letter opinion, the court disagrees.  As Plaintiff acknowledges, the ALJ noted that Mr. Boniello "also opined that the claimant is 'disabled' and unable to work," (Pl. Br. 14) (quoting R. 27).  In these circumstances, this statement is neither unclear nor vague whether it is addressing Mr. Boniello's letter opinion because the only places the statement appears in the record are Mr. Boniello's letter opinion dated August 1, 2022, and his earlier, verbatim (except for administrative information in the first two introductory sentences) letter opinion dated November 22, 2018 which was produced before the period at issue here.  (R. 676-78, 1449-51).  There can be no doubt the ALJ was referring to the letter opinion even though he did not cite it directly.  Moreover, Plaintiff does not cite to authority and the court finds none requiring such citation.  The requirement is clarity and the ALJ's decision is clear in this regard.

As to Plaintiff's claim of no substantive discussion of the letter opinion, the ALJ discussed Mr. Boniello's opinions, noting his opinions Plaintiff "would miss 4 days of work per month, would be off task more than 25 percent of the day, [] has primarily marked and extreme limitations in all areas of basic mental work activity" and "is 'disabled' and unable to work."  (R.27).  He discounted the opinion Plaintiff is disabled and unable to work because it "is a determination reserved to the Commissioner," id., and Plaintiff does not dispute that but argues the ALJ did not explain why he discounted the

16

rest of the letter opinion.  However, the ALJ explained "the remainder of these opinions are unsupported by the claimants' generally conservative treatment history, and these opinions are inconsistent with the normal clinical signs and findings observed by other providers."  (R. 27).  As both Plaintiff and the Commissioner acknowledge, the opinions of a medical source who produces multiple opinions will be considered "together in a single analysis."  20 C.F.R. § 416.920c(b)(1).  However, both parties address the ALJ's consideration of the letter opinion separately from his consideration of Mr. Boniello's Medical Source Statement.  The ALJ did not do so, and the court may not.

As a preliminary matter in addressing this issue, the court must consider the Commissioner's argument that "Mr. Boniello's letter is not a medical opinion under the regulation because it does not describe any specific functional limitation Plaintiff would have in a workplace."  (Comm'r Br. 14) (citing 20 C.F.R. § 416.913(a)(2)).  Plaintiff argues the defendant's argument is without merit and that Mr. Boniello opined Plaintiff cannot maintain the pace of certain job expectations, is distracted and impulsive, is "unable to communicate effectively especially when he feels anxious about his performance," and "becomes highly anxious and verbally aggressive when he feels overwhelmed or is not 'being heard' with regards to his need for assistance."  (Reply 4).  While the Commissioner is correct that Mr. Boniello's letter does not provide any specific (quantified) functional limitations, it does opine as to limitations in Plaintiff's abilities to maintain pace and concentration, to carry out instructions, and to respond appropriately to supervision, co-workers, or work pressures.  20 C.F.R. § 416.913(a)(2)(i)(B).  To that extent it clearly is a medical opinion even though it does

not provide specific, quantified, functional limitations in the mental abilities discussed. Moreover, the ALJ did not discount the letter opinion on the basis it lacks specific functional limitations and the court may not provide a post hoc justification on that basis.

However, the ALJ properly considered both (or all 3) of Mr. Boniello's opinions together in a single analysis and discounted them because "the remainder of these opinions (other than the determination reserved to the Commissioner) are unsupported by the claimants' generally conservative treatment history," and "are inconsistent with the normal clinical signs and findings observed by other providers."  (R. 27) (emphasis added by the court).  The question for the court is whether the ALJ applied the correct legal standard and whether these findings are supported by substantial evidence in the record.

Plaintiff argues the ALJ failed to assess the supportability of Mr. Boniello's opinions because the ALJ's finding that opinion unsupported by Plaintiff's generally conservative treatment history is really an evaluation of treatment by other treatment providers rather than how well Mr. Boniello's treatment records and explanations support his opinions and, as such, is a consideration of the factor of consistency, not supportability.  (Pl. Br. 16-17).  The court does not agree.  Mr. Boniello was Plaintiff's primary mental health treatment provider and when considering Plaintiff's mental health treatment the ALJ found "despite reports of social isolation, constant suicidal thoughts, and irrational fears, the claimant did not require case management or other community supports and he did not seek crisis management or emergent treatment secondary to acute exacerbations."  (R. 26)  He also found, "Although the claimant's therapist noted the claimant's subjective reports and discussions of coping skills, therapy notes revealed no

objective signs and findings." Id. (citing Mr. Boniello's treatment notes in Exhibits B7F, B27F, B31F). While the ALJ also discussed Plaintiff's other mental health treatment—and that treatment might also be considered generally conservative—it is clear from the decision and this record that he specifically considered the treatment of Mr. Boniello to be generally conservative and unsupportive of the mental functional limitations Mr. Boniello opined.

The record evidence supports the ALJ's findings in this regard. Although in his letter opinion Mr. Boniello stated he provided Plaintiff "with a variety of services including individual psychotherapy, case management and supportive counseling with regards to managing his everyday activities," the court has reviewed every treatment note provided from Mr. Boniello and finds no reference to or indication of case management provided by Mr. Boniello. (R. 1450). The ALJ was correct in this finding. Further, although Plaintiff points out that he had inpatient treatment at Cottonwood Spring from May 21 till May 26, 2022, the ALJ recognized that treatment was due to "reports of increased anxiety and suicidal ideation, but he admittedly did not have a plan to commit suicide and he reported his biggest problem at the time was the inability to distract himself from his thought content secondary to lethargy and low motivation." (R. 26) (citing B29F/2, R. 1364; see also B30F2, R. 1370 ("SI [suicidal ideation] no plan")). Moreover, the admission to Cottonwood Springs was due to a 72-hour hold and the record does not show a recommendation by Mr. Boniello or seeking emergency care.

In fact, the discussion of Cottonwood Springs in Mr. Boniello's treatment notes is, to say the least, confusing. As noted above, Plaintiff was an inpatient in Cottonwood

Springs from May 21 to May 26, 2022. (R. 1370-1442). And the first mention of Cottonwood Springs in Mr. Boniello's treatment notes occurred in a note dated May 29, 2022 wherein it is reported, "We discussed the <u>possibility</u> of his going to the hospital and [Plaintiff] reported that he would contact Cottonwood Springs in Olathe if he should continue to feel destitute. [Plaintiff] reported that he did not feel actively suicidal when he left my office, but he agreed to call me if his status should change. New appt. scheduled for 06/07/22 at 2:00 pm." (R. 1446) (emphasis added). The next treatment note is dated June 25, 2022, and records, "[Plaintiff] and I discussed his hospitalization at Cottonwood Springs and the goals established there for future treatment." <u>Id.</u> 1446-47. These records reveal Plaintiff had a treatment visit with Mr. Boniello three days after his discharge from Cottonwood Springs, but the only mention of the hospital is Plaintiff's statement that he would contact them if he continued to feel destitute—in response to a discussion of the <u>possibility</u> of going to a hospital. Then, more than three weeks later, it is recorded that they discussed his hospitalization at Cottonwood Springs. Mr. Boniello's treatment records simply do not indicate he suggested any more aggressive treatment other than, possibly, this one obtuse, after-the-fact reference.

Plaintiff's argument that to the extent the ALJ's reference to treatment history is a remark upon Mr. Boniello's own treatment history with Plaintiff it is a consideration of the factor of relationship and not supportability does not change the analysis. While the treatment history relied upon by the ALJ is that of Mr. Boniello, Plaintiff's mental health treatment provider, as Plaintiff argues, the factor of supportability always relates to how well the opinion is supported by the case record and the explanation of the medical

source who provided the opinion.  Here, the ALJ found the course of treatment recorded in Mr. Boniello's records does not support the limitations he opined.  That finding is supported by the record evidence and Plaintiff has not pointed to evidence which compels a different finding.  Plaintiff has shown no error in the ALJ's supportability finding.

Plaintiff's argument the ALJ's finding Mr. Boniello's "opinions are inconsistent with the normal clinical signs and findings observed by other providers" is unsupported by substantial evidence because "the objective observations of [Plaintiff] throughout the medical record reflect findings of 'blunted' or 'restricted' affect with 'anxious' or 'depressed mood'" (Pl. Br. 20-21) fares no better.  The ALJ acknowledged Plaintiff's "mood and affected [sic] varied widely between euthymic, anxious, depressed, or blunted."  (R. 26).  But he went on to find that Plaintiff "generally exhibited logical thoughts, normal psychomotor activity, good eye contact, a pleasant and cooperative attitude, and intact attention span, concentration, and memory functioning."  Id. (citing Exs. B14F/7; B2F/3; B20F/6; B22F/5; B23F/19; B29F/2, 4; R. 475, 998, 1195, 1281, 1301, 1364, 1366).  He then noted that these "normal clinical signs and findings are inconsistent with more than moderate psychological limitations."  Id.  The ALJ recognized that Mr. Boniello opined Plaintiff "has primarily marked and extreme limitations in all areas of basic mental work activity."  Id. 27.  And, marked and extreme limitations are more than moderate psychological limitations.  The ALJ also considered the opinions of the state agency psychological consultants and found them unpersuasive because the record evidence regarding Plaintiff's sleep disorders, ADHD, and May 2022 inpatient hospitalization are inconsistent with the mild limitations opined by the

psychological consultants.  Id.  The decision indicates the ALJ considered all the record evidence regarding Plaintiff's mental impairments and determined that record supported finding Plaintiff's limitations greater than the mild limitations opined by the psychological consultants and lesser than the marked and extreme limitations opined by Mr. Boniello.  The record evidence supports that finding and Plaintiff has not pointed to such evidence as compels finding otherwise.

Plaintiff has not shown error in the ALJ's finding.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 1, 2024, at Kansas City, Kansas.


s:/ **John W. Lungstrum___**
**John W. Lungstrum**
**United States District Judge**